TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00376-CV






Kenneth Becker, Appellant


v.


Carla Hahn Clardy, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 230,807-B, HONORABLE RICK MORRIS, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 The majority concludes that the trial court lacked jurisdiction over Becker's
defamation claim because hearing the claim would necessarily require "an analysis of internal church
matters and doctrine." Because I would hold that resolution of Becker's defamation claim does not
require such an inquiry into any internal church matters, I respectfully dissent.

 The ecclesiastical abstention doctrine prevents secular courts from reviewing disputes
that would require an analysis of "theological controversy, church discipline, ecclesiastical
government, or the conformity of the members of the church to the standard of morals required." 
Patton v. Jones, 212 S.W.3d 541, 547 (Tex. App.--Austin 2006, pet. denied) (quoting Watson v.
Jones, 80 U.S. 679, 733 (1872)). It is not true, however, that persons may, with impunity, commit
intentional torts "under the cloak of religion." Pleasant Glade v. Schubert, 264 S.W.3d 1, 11-12
(Tex. 2008). The Free Exercise Clause does not categorically insulate religious conduct from
judicial scrutiny; it only prohibits courts from deciding issues of religious doctrine. Id.

 To prove defamation, Becker must show that Clardy published a statement that was
false and defamatory toward Becker and that Clardy acted with negligence regarding the truth of that
statement. See WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). Becker's petition
claimed that Clardy made the following "untrue and defamatory statements" about him: (1) Becker
"had something to do with [a teacher] being fired," (2) Becker "has a 'hit list' of teachers' names that
he wants to target," (3) Becker "has sent Clardy 'hate mail,'" (4) Becker "caused Clardy's son to run
away from school," and (5) Becker "was the reason Clardy was fired from St. Mary's School." 
Becker further claimed that Clardy communicated the following defamatory remarks in writing: 
(1) Becker "humiliated a sixth grade student during Stations," (2) "Clardy had serious concerns
regarding her son's emotional and spiritual well-being" in Becker's class, and (3) Becker was
"harassing" Clardy and "created a hostile work environment."

 The majority suggests that a resolution of Becker's defamation claim would require
an analysis of internal church matters and doctrine because it calls for the trial court to inquire into
the discipline decisions made by the school under the "Diocese of Austin Policies on Ethics and
Integrity in Ministry" (the Policy). I fail to see why an inquiry into the school's discipline decisions
would be necessary, and the majority does little to explain this conclusion. The first and third
elements of defamation, that Clardy published the statements to one or more people and did so
negligently, do not involve the school's governance in any form. Finding these elements would be
a purely secular inquiry into what Clardy said to whom and what she knew or should have
known--perhaps through sources as ready as student testimony and paper or e-mail records--with
no reference to school policies at any point. (1)

 With regard to the second element, that the statements were false, an investigation
into the truth of most of Clardy's alleged statements would not implicate the Policy either. (2) Whether
Clardy was or was not disciplined by the school as a result of these statements would have no
bearing on an analysis of the facts they contained. For example, determining the truth of whether
Becker had a "hit list" of other teachers might require interviewing educators or examining Becker's
computer files, but it is difficult to imagine how any reference to discipline procedures would help.
Likewise, whether Becker endangered Clardy's son's well-being in class or humiliated a sixth grade
student would likely need to be determined by questioning other students. I would hold that, with
the exception of the first alleged statement concerning Becker's involvement in a teacher's firing,
determining the truth or falsity of the alleged statements would not involve the Policy in any way.

 Further, the facts at issue here are readily distinguishable from those of the cases
relied upon by the majority. Each of the majority's cases involved a tort directly arising out of one
or more members of the religious community enforcing that religious community's canon of
discipline or beliefs. See Schubert, 264 S.W.3d at 3-6 (involving teenager's claims against leaders
and members of church youth group for restricting her movement against her will because they
believed she was demon possessed); Westbrook v. Penley, 231 S.W.3d 389, 391 (Tex. 2007)
(involving parishioner's suit against pastor for "shunning" her from community for engaging in
"biblically inappropriate relationship"); In re Godwin, 293 S.W.3d 742, 747-49 (Tex. App.--San
Antonio 2009, mand. denied) (involving church member's suit against church and pastor who,
relying upon Romans 16:17 ("Mark those who cause division and avoid them"), read statements
"marking" him for bribery and dissension before congregation for purposes of discipline and church
unity); Patton, 212 S.W.3d at 546 (involving youth minister's suit against former church employer
for defamation and tortious interference with employment contract after termination for rumors that
he dated "certain" women and "used" internet pornography); Williams v. Gleason, 26 S.W.3d 54,
56-58 (Tex. App. Houston [14th Dist.] 2000, pet. denied) (involving church members' suit
against elders following extensive judicial procedure within church). In all of these cases, the action
challenged by the plaintiff involved a member of the community enforcing a rule or tenet of the
religious institution.

 By contrast, Clardy did not make any complained-of statements in the guise of
enforcing any school-promulgated rule. The record does not suggest, for instance, that there was
some official religious obligation for Clardy to tell students that Becker sent hate mail or followed
boys into the restroom. Nor is the school itself being sued for deciding not to discipline Clardy for
her statements, or Clardy being sued for making reports that led to Becker's being fired or
disciplined by the school. In these cases, the facts might center on internal school procedure and
require our court to second-guess matters of ecclesiastic governance. As the facts exist, however,
Becker's claims implicate not the internal discipline procedures of the school but Clardy, directly
and individually, for her personal actions.

 In addition, the majority's citation of Westbrook, 231 S.W.3d at 395, erroneously
suggests that Becker's civil claim is somehow barred by his earlier appeal to school officials to
discipline Clardy. In fact, Becker's circumstances are fairly incomparable to those of the Westbrook
plaintiff, who joined a church knowing that it could terminate her membership on suspicion of
certain behavior, then attempted to sue to prevent it doing so. This prompted the court to observe
that people become church members "upon the condition of continuing or not as they and their
churches might determine, and they thereby submit to the ecclesiastical power and cannot now
invoke the supervisory power of the civil tribunals."

 Here, Becker is not trying to assert a right that he inherently checked at the church
door. The record suggests no religious tenet to the effect that, once Becker sought relief against
Clardy from school officials, they assumed full and final authority over her liability for the alleged
behavior. The majority asserts that by declining to discipline Clardy after her resignation, the church
made a decision in her case--a kind of action by inaction--that should bind Becker. Becker disputes
that a final decision was made, but only that after Clardy resigned, "questions just stopped being
asked." Even if a "decision" had been made, I fail to see under these facts what religious obligation
bound Becker to forego any other remedy. Consequently, it is unclear how a civil court would
impinge on church autonomy by ruling on this matter on secular grounds.

 Ultimately, I am not convinced that the free-exercise interests the majority asserts,
however critical when they are actually at stake, are established clearly enough on this record to
warrant subverting the other important interest of giving Becker his day in court. Though I make
no judgment as to the success of the merits underlying Becker's defamation claim, I believe that a
civil court could resolve the claim without analyzing any matters prohibited by the ecclesiastical
abstention doctrine. Accordingly, I would reverse the trial court's judgment and hold that there was
jurisdiction to hear the claim. For this reason, I respectfully dissent.


 _____________________________________

 Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Filed: December 22, 2011
1. I find it irrelevant that Becker alleges harm to his reputation only in the church community. 
The majority emphasizes this fact, reasoning that it necessitates an inquiry into church doctrine all
the more because a court would have to assess community members' beliefs to know how they would
judge Becker. On the contrary, I believe the acts of which Becker claims he was accused could be
perceived negatively apart from any particular religious doctrine. The majority fails to explain why
Becker could not prove harm to his reputation based on more universal, rather than faith-specific,
principles. Further, the majority fails to cite any authority directly supporting its proposition.
2. I recognize that an inquiry into the truth of the alleged statement that Becker "had
something to do with [a teacher] being fired" could arguably require an inquiry into the school's
decision as to why it fired that particular teacher. Even were we to find that the trial court lacked
jurisdiction to hear a defamation claim based on this statement, I would allow Becker's claim as to
the remaining statements.


 Clardy's statement that Becker was the reason Clardy was fired from the school does not
require an inquiry into the school's disciplinary procedures, as the record indicates that Clardy was
not "fired" from St. Mary's school at all, but rather resigned of her own free will. Thus, Clardy's
alleged statement may be proven false without any inquiry into the school's discipline of Clardy.