# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00376-CV

**Kenneth Becker, Appellant**

**v.**

**Carla Hahn Clardy, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 230,807-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

The majority concludes that the trial court lacked jurisdiction over Becker's defamation claim because hearing the claim would necessarily require "an analysis of internal church matters and doctrine." Because I would hold that resolution of Becker's defamation claim does not require such an inquiry into any internal church matters, I respectfully dissent.

The ecclesiastical abstention doctrine prevents secular courts from reviewing disputes that would require an analysis of "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required." *Patton v. Jones*, 212 S.W.3d 541, 547 (Tex. App.—Austin 2006, pet. denied) (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1872)). It is not true, however, that persons may, with impunity, commit intentional torts "under the cloak of religion." *Pleasant Glade v. Schubert*, 264 S.W.3d 1, 11–12

(Tex. 2008). The Free Exercise Clause does not categorically insulate religious conduct from judicial scrutiny; it only prohibits courts from deciding issues of religious doctrine. *Id.*

To prove defamation, Becker must show that Clardy published a statement that was false and defamatory toward Becker and that Clardy acted with negligence regarding the truth of that statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Becker's petition claimed that Clardy made the following "untrue and defamatory statements" about him: (1) Becker "had something to do with [a teacher] being fired," (2) Becker "has a 'hit list' of teachers' names that he wants to target," (3) Becker "has sent Clardy 'hate mail,'" (4) Becker "caused Clardy's son to run away from school," and (5) Becker "was the reason Clardy was fired from St. Mary's School." Becker further claimed that Clardy communicated the following defamatory remarks in writing: (1) Becker "humiliated a sixth grade student during Stations," (2) "Clardy had serious concerns regarding her son's emotional and spiritual well-being" in Becker's class, and (3) Becker was "harassing" Clardy and "created a hostile work environment."

The majority suggests that a resolution of Becker's defamation claim would require an analysis of internal church matters and doctrine because it calls for the trial court to inquire into the discipline decisions made by the school under the "Diocese of Austin Policies on Ethics and Integrity in Ministry" (the Policy). I fail to see why an inquiry into the school's discipline decisions would be necessary, and the majority does little to explain this conclusion. The first and third elements of defamation, that Clardy published the statements to one or more people and did so negligently, do not involve the school's governance in any form. Finding these elements would be a purely secular inquiry into what Clardy said to whom and what she knew or should have

2

known—perhaps through sources as ready as student testimony and paper or e-mail records—with no reference to school policies at any point.[1]

With regard to the second element, that the statements were false, an investigation into the truth of most of Clardy's alleged statements would not implicate the Policy either.[2]  Whether Clardy was or was not disciplined by the school as a result of these statements would have no bearing on an analysis of the facts they contained.  For example, determining the truth of whether Becker had a "hit list" of other teachers might require interviewing educators or examining Becker's computer files, but it is difficult to imagine how any reference to discipline procedures would help.  Likewise, whether Becker endangered Clardy's son's well-being in class or humiliated a sixth grade student would likely need to be determined by questioning other students.  I would hold that, with the exception of the first alleged statement concerning Becker's involvement in a teacher's firing, determining the truth or falsity of the alleged statements would not involve the Policy in any way.

[1] I find it irrelevant that Becker alleges harm to his reputation only in the church community.  The majority emphasizes this fact, reasoning that it necessitates an inquiry into church doctrine all the more because a court would have to assess community members' beliefs to know how they would judge Becker.  On the contrary, I believe the acts of which Becker claims he was accused could be perceived negatively apart from any particular religious doctrine.  The majority fails to explain why Becker could not prove harm to his reputation based on more universal, rather than faith-specific, principles.  Further, the majority fails to cite any authority directly supporting its proposition.

[2] I recognize that an inquiry into the truth of the alleged statement that Becker "had something to do with [a teacher] being fired" could arguably require an inquiry into the school's decision as to why it fired that particular teacher.  Even were we to find that the trial court lacked jurisdiction to hear a defamation claim based on this statement, I would allow Becker's claim as to the remaining statements.

Clardy's statement that Becker was the reason Clardy was fired from the school does not require an inquiry into the school's disciplinary procedures, as the record indicates that Clardy was not "fired" from St. Mary's school at all, but rather resigned of her own free will.  Thus, Clardy's alleged statement may be proven false without any inquiry into the school's discipline of Clardy.

3

Further, the facts at issue here are readily distinguishable from those of the cases relied upon by the majority. Each of the majority's cases involved a tort directly arising out of one or more members of the religious community enforcing that religious community's canon of discipline or beliefs. *See Schubert*, 264 S.W.3d at 3–6 (involving teenager's claims against leaders and members of church youth group for restricting her movement against her will because they believed she was demon possessed); *Westbrook v. Penley*, 231 S.W.3d 389, 391 (Tex. 2007) (involving parishioner's suit against pastor for "shunning" her from community for engaging in "biblically inappropriate relationship"); *In re Godwin*, 293 S.W.3d 742, 747–49 (Tex. App.—San Antonio 2009, mand. denied) (involving church member's suit against church and pastor who, relying upon Romans 16:17 ("Mark those who cause division and avoid them"), read statements "marking" him for bribery and dissension before congregation for purposes of discipline and church unity); *Patton*, 212 S.W.3d at 546 (involving youth minister's suit against former church employer for defamation and tortious interference with employment contract after termination for rumors that he dated "certain" women and "used" internet pornography); *Williams v. Gleason*, 26 S.W.3d 54, 56–58 (Tex. App. Houston [14th Dist.] 2000, pet. denied) (involving church members' suit against elders following extensive judicial procedure within church). In all of these cases, the action challenged by the plaintiff involved a member of the community enforcing a rule or tenet of the religious institution.

By contrast, Clardy did not make any complained-of statements in the guise of enforcing any school-promulgated rule. The record does not suggest, for instance, that there was some official religious obligation for Clardy to tell students that Becker sent hate mail or followed

4

boys into the restroom. Nor is the school itself being sued for deciding not to discipline Clardy for her statements, or Clardy being sued for making reports that led to Becker's being fired or disciplined by the school. In these cases, the facts might center on internal school procedure and require our court to second-guess matters of ecclesiastic governance. As the facts exist, however, Becker's claims implicate not the internal discipline procedures of the school but Clardy, directly and individually, for her personal actions.

In addition, the majority's citation of *Westbrook*, 231 S.W.3d at 395, erroneously suggests that Becker's civil claim is somehow barred by his earlier appeal to school officials to discipline Clardy. In fact, Becker's circumstances are fairly incomparable to those of the *Westbrook* plaintiff, who joined a church knowing that it could terminate her membership on suspicion of certain behavior, then attempted to sue to prevent it doing so. This prompted the court to observe that people become church members "upon the condition of continuing or not as they and their churches might determine, and they thereby submit to the ecclesiastical power and cannot now invoke the supervisory power of the civil tribunals."

Here, Becker is not trying to assert a right that he inherently checked at the church door. The record suggests no religious tenet to the effect that, once Becker sought relief against Clardy from school officials, they assumed full and final authority over her liability for the alleged behavior. The majority asserts that by declining to discipline Clardy after her resignation, the church made a decision in her case—a kind of action by inaction—that should bind Becker. Becker disputes that a final decision was made, but only that after Clardy resigned, "questions just stopped being asked." Even if a "decision" had been made, I fail to see under these facts what religious obligation

5

bound Becker to forego any other remedy. Consequently, it is unclear how a civil court would impinge on church autonomy by ruling on this matter on secular grounds.

Ultimately, I am not convinced that the free-exercise interests the majority asserts, however critical when they are actually at stake, are established clearly enough on this record to warrant subverting the other important interest of giving Becker his day in court. Though I make no judgment as to the success of the merits underlying Becker's defamation claim, I believe that a civil court could resolve the claim without analyzing any matters prohibited by the ecclesiastical abstention doctrine. Accordingly, I would reverse the trial court's judgment and hold that there was jurisdiction to hear the claim. For this reason, I respectfully dissent.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Filed: December 22, 2011

6