

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00636-CV

**IN RE** Rosa **VIDA**

Original Mandamus Proceeding[1]

Opinion by:      Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
     Marialyn Barnard, Justice
     Rebeca C. Martinez, Justice

Delivered and Filed:  January 7, 2015

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

This mandamus proceeding arises out of a lawsuit filed by the parents of a kindergarten child who was not promoted to first grade in 2012 by the Mary Help of Christians School ("School"), which is a Catholic school located within the Diocese of Laredo but owned and operated by the Institute of the Daughters of Mary Help of Christian Selesian Sisters of St. John Bosco ("Institute").  The parents sued the School, the Institute, and Rosa Vida, the superintendent of the Diocese of Laredo Catholic Schools, but this mandamus proceeding is brought by only Vida, challenging the trial court's jurisdiction to consider the claims asserted against her.  Vida's

---

[1] This proceeding arises out of Cause No. 2012-CVT-000773-D3, styled *Luis and Janeth Moreno, et al. v. Mary Help of Christians School, Institute of the Daughters of Mary Help of Christians Salesian Sisters of St. John Bosco, and Rosa Vida*, pending in the 341st Judicial District Court, Webb County, Texas, the Honorable Beckie Palomo, presiding.

jurisdictional challenge is based on the ecclesiastical abstention doctrine. Holding that the doctrine bars the claims against Vida, we conditionally grant the petition for writ of mandamus.

## BACKGROUND

The School admitted the child in question, G.M., in 2009, when she was three-years-old. G.M. attended K-3, K-4, and kindergarten at the School. After G.M. successfully completed kindergarten, the School's principal informed G.M.'s parents that she could not be admitted to the first grade because she would not be six-years-old before September 1st. Both the School's handbook and the Diocese's policy manual contain this age requirement.[2]

In addition to suing the School and the Institute, G.M.'s parents asserted various claims against Vida based on her communications with the School's principal about the age requirement. G.M.'s parents alleged Vida was negligent in misconstruing state law regarding school age requirements and tortiously interfered with their contract for G.M.'s enrollment in first grade. They also alleged a claim for conspiracy and requested a declaratory judgment that G.M. was entitled to be promoted to the first grade as long as she obtained satisfactory performance in kindergarten and her parents fulfilled their financial responsibilities.

Vida filed a plea to the jurisdiction asserting the ecclesiastical abstention doctrine precluded the trial court from exercising jurisdiction over the claims asserted against her. The trial court denied Vida's plea, and Vida filed this original mandamus proceeding challenging the trial court's ruling.

---

[2] The School's handbook states, "On or before September 1st, a child must be three and toilet trained to enter K3; four to enter K4; five to enter K5; six to enter Gr. 1." The Diocese's policy manual states, "A student must be six years of age on or before September 1 to be admitted into the first grade."

## STANDARD OF REVIEW

"Lack of jurisdiction may be raised by a plea to the jurisdiction when religious-liberty grounds form the basis for the jurisdictional challenge." *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). We review a trial court's ruling on a plea questioning the trial court's subject-matter jurisdiction de novo. *Id*. "A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the pleadings affirmatively demonstrate an incurable jurisdictional defect, then the plea to the jurisdiction must be granted." *Id*.

## THE ECCLESIASTICAL ABSTENTION DOCTRINE

The claims asserted against Vida are based on her communications relating to the age requirement contained in the Diocese's policy manual. G.M.'s parents argue that the age requirement is a purely secular policy based on a misinterpretation of state law; therefore, their claims relating to the enforcement of the age requirement raise no religious questions. Moreover, because the age requirement has no basis in religion, they further argue that their claims do not affect church governance.

"The First Amendment to the United States Constitution affords broad protection to the free exercise of religion." *In re Godwin*, 293 S.W.3d 742, 747 (Tex. App.—San Antonio 2009, orig. proceeding). Following this constitutional mandate, the ecclesiastical abstention doctrine has evolved as a "structural restraint on the constitutional power of the civil courts to regulate matters of religion." *Westbrook*, 231 S.W.3d at 397-98.

Under a plain reading, the ecclesiastical abstention doctrine would appear to apply only if claims turn on matters of religious doctrine or practice. The doctrine generally provides that "civil courts may not intrude into the church's governance of 'religious' or 'ecclesiastical' matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality." *Godwin*, 293 S.W.3d at 748 (internal citations omitted). The

Texas Supreme Court, however, has clarified that government action may burden the free exercise of religion "by encroaching on the church's ability to manage its internal affairs." *Westbrook*, 231 S.W.3d at 395. As a result, in deciding whether a court should refrain from exercising jurisdiction under the doctrine, courts must consider the substance and nature of the claim ***and*** the effect of a judicial resolution. *Becker v. Clardy*, No. 03-10-00376-CV, 2011 WL 6756999, at *3 (Tex. App.—Austin Dec. 22, 2011, pet. denied) (mem. op.). If judicial resolution of the claim will interfere with a church's management of its internal affairs or encroach upon the church's internal governance, the court may not exercise jurisdiction over the claim. *See Westbook*, 231 S.W.3d at 395; *Retta v. Mekonen*, 338 S.W.3d 72, 76 (Tex. App.—Dallas 2011, no pet.) ("courts must be careful not to intrude upon internal matters of church governance") (internal citations omitted); *Godwin*, 293 S.W.3d at 749-50 (holding trial court abused its discretion in exercising jurisdiction over claims encroaching upon the autonomy of the church over matters of internal church governance).

In *Westbrook*, the defendant pastor, who was also a licensed professional counselor, directed his congregation to shun the plaintiff for engaging in biblically inappropriate relationships based on information disclosed during a counseling session. 231 S.W.3d at 393. The plaintiff argued that the court should exercise jurisdiction because her claims against the pastor did not "derive from or depend upon religious doctrine," but on the simple application of the rule protecting communications between a licensed professional counselor and a client. *Id.* at 396. The court disagreed, asserting, "While it may be theoretically true that a court could decide whether Westbrook breached a secular duty of confidentiality without having to resolve a theological question, that doesn't answer whether its doing so would unconstitutionally impede the church's authority to manage its own affairs." *Id.* at 397. The court further asserted, "while the elements of Penley's professional-negligence claim can be *defined* by neutral principles without regard to

religion, the *application* of those principles to impose civil tort liability on Westbrook would impinge upon [the church's] ability to manage its internal affairs." *Id*. at 400. Similarly, in this case, even if the School's age requirement was not *required* by Texas law, imposing civil tort liability on the superintendent of Catholic schools for enforcing a policy that established an age requirement would impinge upon the Diocese's ability to manage its internal affairs by adopting policies regarding admission requirements for Catholic schools.

Finally, the Texas Supreme Court has stated, "Membership in a church creates a different relationship from that which exists in other voluntary societies . . . . Church relationship stands upon a different and higher plane, and the right of a church to decide for itself whom it may admit into fellowship . . . cannot be questioned by the courts, when no civil or property rights are involved." *Id*. at 398 (internal citations omitted). Catholic schools are "a powerful vehicle for transmitting the Catholic faith to the next generation," and "parochial schools involve substantial religious activity and purpose." *Lemon v. Kurtzman*, 403 U.S. 602, 616 (1971). Just as the courts cannot question the admission requirements for Catholic churches, they also do not have jurisdiction to consider a claim arising from the admission requirements for Catholic schools which "are subject to the authority of the Church" under Canon Law.[3]

In addition to generally challenging the application of the ecclesiastical abstention doctrine, G.M.'s parents argue that the doctrine should not protect against its claims in this case because the School's handbook only mentions the age requirement for purposes of admission not of promotion.

---

[3] G.M.'s parents globally contend that this court should not consider various items of evidence presented to the trial court, including the Canon Law and the Diocese's policy manual, because the trial court implicitly granted their objections to that evidence. We disagree. The Texas Supreme Court has stated that the standard applied in reviewing a plea to the jurisdiction "mirrors that of a summary judgment." *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Moreover, this court has stated, "a trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment." *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.). Similarly, a ruling on a plea to the jurisdiction also is not an implicit ruling on any objections to evidence presented in support of or in response to the plea. *See id*.

As previously noted, however, the doctrine considers not just the nature of the claims asserted but the effect of judicial resolution. Addressing whether the age requirement could be applied only to initial admissions decisions and not to promotion decisions delves into the Diocese's governance of its internal affairs which the doctrine precludes.

G.M.'s parents also contend that the Diocese's policy manual was not formally executed and adopted. First, the evidence cited in support of this contention is questionable. A witness's lack of familiarity with a Diocesan policy manual does not equate to evidence that the policy manual had or had not been adopted by the Diocese. Second, given the evidence of the meeting agendas in which the age requirement was discussed, Vida clearly considered the policy manual to be of binding effect. Finally, the manner in which the Diocese formally executes and adopts a policy again delves into the Diocese's governance of its internal affairs which the doctrine precludes.

In their final argument, G.M.'s parents contend Vida is not entitled to mandamus relief because she has an adequate remedy by appeal and because she waited four months before requesting mandamus relief. First, because Vida's petition "concerns important issues relating to [Vida's] First Amendment right to the free exercise of religion," "an appeal will not adequately protect [that] right." *Godwin*, 293 S.W.3d at 747. Second, "[t]o invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights, and also the moving party's good faith and detrimental change in position because of the delay." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010). Apart from arguing that Vida waited four months to file her petition, G.M.'s parents present no argument to demonstrate a detrimental change in position during those four months. Therefore, G.M.'s parents have failed to show that laches should be applied in the context of this case raising constitutional questions regarding the jurisdiction of the trial court to consider the underlying claims. *See id.*

## CONCLUSION

Vida's petition for writ of mandamus is conditionally granted, and the trial court is directed to enter an order granting Vida's plea to the jurisdiction. The writ will issue only if the trial court fails to enter an order granting Vida's plea to the jurisdiction within ten days from the date of this court's order. The temporary stay granted by this court will remain in effect until the trial court enters the order granting the plea.

Karen Angelini, Justice