

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00235-CV

James **CRAVER**,
Appellant

v.

**FAITH LUTHERAN CHURCH**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 21-0912-CV-E
Honorable William D. Old III, Judge Presiding

Opinion by:  Rebeca C. Martinez, Chief Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 8, 2023

AFFIRMED

James Craver, the former senior pastor at Faith Lutheran Church ("Faith Lutheran" or the "Church"), sued the Church following his departure. The Church filed a plea to the jurisdiction, seeking dismissal of Craver's lawsuit based on the ecclesiastical abstention doctrine and the ministerial exception. The trial court granted the plea and dismissed Craver's lawsuit. We affirm.

## BACKGROUND[1]

Craver served as an associate pastor at Faith Lutheran beginning in 2017, and by 2020, he held the position of senior pastor. In August 2020, members of the Church's executive board, the Congregation Council, notified Craver about complaints congregants had made against him. Initially, council members did not provide any evidence or details. Later, council members indicated to Craver that the youth pastor had accused Craver of bullying. Craver denied any inappropriate behavior.

On August 30, 2020, the Congregation Council provided Craver with an option to sign a severance agreement drafted by the Church (the "Severance Agreement" or the "Agreement"). As Craver described in his petition:

> Faith Lutheran Church presented him the two options that either: Mr. Craver could reject the proposed Severance Agreement and Faith Lutheran Church would conduct an investigation of all the alleged complaints and push for the vote to terminate him; or Mr. Craver could sign the proposed Severance Agreement, and in return Faith Lutheran Church would not further disclose, publicize, or pursue the alleged complaints.

Craver alleged that he knew, "investigations of this type can be very divisive to faith communities, and he did not want that to tarnish his successful time as pastor [at Faith Lutheran] or cause division amongst the congregation." Furthermore, he alleged:

> [B]oth in the Severance Agreement itself ("if Pastor Craver does not sign the settlement agreement") and orally, Faith Lutheran Church represented to Mr. Craver that if he entered into the Severance Agreement, that would end the matter. He was assured that the vague, unsubstantiated allegations would not be spread throughout the congregation and the "secret information" . . . would not be revealed.

---

[1] The background is taken from Craver's petition, liberally construed in his favor, and evidence submitted by the parties in connection with the Church's plea to the jurisdiction.

Craver signed the Severance Agreement, asserting he was induced to sign "[b]ased on those express representations," which, if honored, would allow him to leave with "his good name and excellent reputation" intact.

According to Craver, Faith Lutheran breached the contract and prior representations by publishing vague references to Craver's alleged misconduct in the Church's newsletter. The Church also did so, according to Craver, when, during a congregational meeting on September 10, 2020, council members "repeated false statements that Mr. Craver misused money belonging to the parish, engaged in 'intimidation, sexual harassment, abuse of authority, and lying', and other allegedly improper conduct of 'bullying.'" Craver also alleged that Faith Lutheran "made similar false statements to the Lutheran Congregations in Mission for Christ ('LCMC'), a governing body for the Lutheran Church," and that "[w]ith his professional and personal reputation so maligned, Mr. Craver's ability to pursue his vocation as a Lutheran pastor has been effectively thwarted."

Based on these allegations, Craver sued Faith Lutheran for fraudulent inducement and breach of contract. He contends he was fraudulently induced to sign the Severance Agreement and that Faith Lutheran materially breached the Agreement "because one of the material terms was that the[] unproven, meritless allegations would not be disclosed publicly."

Faith Lutheran filed a copy of the Severance Agreement with its plea to the jurisdiction.[2] By the Severance Agreement, the Church and Craver agreed that Craver's employment would end on September 5, 2020. The Severance Agreement contains a recital:

> WHEREAS, if Pastor Craver does not sign this settlement agreement, Faith Lutheran will hire an outside party to conduct a full forensic investigation of the allegations of misconduct and present those findings to the full congregation to ask the full congregation to vote to terminate Pastor Craver's call.

---

[2] The Severance Agreement is confidential and was filed under seal, but we describe and quote it as necessary to resolve this appeal. *See R.V.K. v. L.L.K.*, 103 S.W.3d 612, 614–15 (Tex. App.—San Antonio 2003, no pet.) (en banc) (explaining balance we must strike between writing a cogent, meaningful opinion that is available to the public and litigants' interest in keeping sealed documents confidential).

Below the recital, the parties agreed: "[T]he terms of this [Severance] Agreement shall be held in strict confidence and shall not be disclosed to or discussed with any other person or entity, either directly or indirectly." The Severance Agreement does not contain a non-disparagement clause. *Cf. Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 623 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (construing non-disparagement clause, which provided: "[The church] agrees that it will not disparage [Shannon]"). Craver also does not pinpoint the express language in the Agreement that amounts to, as he alleges, "material terms . . . that the[] unproven, meritless allegations would not be disclosed publicly." In his appellate brief, Craver argues, with reference to a pattern jury charge, that in determining whether there was an agreement, a jury may consider surrounding circumstances. *See* Business, Consumer, Insurance & Employment, TEXAS PATTERN JURY CHARGE 101.3 (2020 ed.) ("In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances.").

In response to the lawsuit, Faith Lutheran filed a plea to the jurisdiction, arguing Craver's claims are barred by the ecclesiastical abstention doctrine and the ministerial exception because the substance of the claims is inextricably intertwined with Craver's employment and matters of church governance. The Church filed with its plea its constitution and bylaws. These documents describe the process by which a pastor's call may be terminated. Under the Church's constitution:

> In the case of alleged difficulties which imperil the effective functioning of th[e] Congregation, all concerned persons shall be heard, after which the Congregation Council shall decide on the course of action to be recommended to the pastor. If the pastor agrees to carry out such recommendations, no further action shall be taken by the Congregation Council. If the pastor fails to agree, this Congregation may dismiss the pastor by a 60% majority ballot vote of the voting members present and voting at a legally called meeting of th[e] Congregation with a quorum present.

The Church also filed an affidavit by the Church's Vice President of the Congregation Council. In this affidavit, the Vice President avers that, after complaints were brought to the Council's attention, the Congregation Council met and,

> believed it was in the best interest of the Congregation to offer [Craver] the option of entering into a separation agreement, or having the church retain an independent investigator to conduct a full investigation into the accusations of misconduct, after which time the results of the investigation would be presented to the Congregation and the issue of [Craver]'s retention as Senior Pastor would be brought to a vote of the Congregation as prescribed by Faith Lutheran Church's Constitution and Bylaws.

According to the Vice President, Members of the Congregation Council met with Craver to present the option of entering into a separation agreement, and Craver "chose the recommendation to resign and accept a severance." The Vice President further avers: "No promises were made to [Craver] about what may or not be said to the Congregation following [Craver]'s resignation."

According to the Vice President, the Church received an influx of inquiries from congregants concerning the circumstances surrounding Craver's resignation. The Vice President states:

> Given the number of inquiries and the belief the Congregation had some right to know the basis for their senior pastor's departure, the Executive Committee held a town hall meeting to which only members of the Congregation were invited. . . .

> The Executive Committee members spoke at the town hall and spoke generally as to the circumstances leading to [Craver]'s resignation, which was done so for the protection of those directly affected by [Craver]'s misconduct. The terms of the [Severance] Agreement were not discussed.

Craver asserts in an affidavit filed with his response to the plea: "I was willing to move on [from the Church] based on certain representations made to me — most significantly that if I signed the agreement and agreed to the voluntary separation, that [Faith Lutheran] would not further disseminate the unsubstantiated allegations." A Church congregant also provided an affidavit, which Craver filed with his response. According to the congregant: "Craver told me that the people

in the executive meeting that put the proposal [to sign a separation agreement] in front of him told [Craver] that if he signed the document 'that it would go no further.'"

The trial court granted the Church's plea and dismissed Craver's lawsuit for lack of jurisdiction. Craver timely appealed.

## STANDARD OF REVIEW

We review a trial court's ruling on a plea to the jurisdiction *de novo*. *In re Lubbock*, 624 S.W.3d 506, 512 (Tex. 2021) (orig. proceeding). In assessing a plea to the jurisdiction, we begin with the plaintiff's live pleading, which we construe liberally in favor of the plaintiff, taking all factual assertions as true. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). "We may also consider evidence submitted to negate the existence of jurisdiction — and we must consider such evidence when necessary to resolve the jurisdictional issue." *Id.* When considering evidence, the standard generally mirrors that of a traditional summary judgment. *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c). We must grant the plea if the plaintiff's pleading affirmatively negates the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of jurisdiction. *Heckman*, 369 S.W.3d at 150.

## ECCLESIASTICAL ABSTENTION DOCTRINE

The Free Exercise Clause of the First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. The clause applies to the states by virtue of the Fourteenth Amendment, and the limitation deprives courts of jurisdiction "to decide questions of an ecclesiastical or inherently religious nature." *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 605–06 (Tex. 2013); *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007). To determine whether the ecclesiastical abstention doctrine applies, courts analyze "whether a particular dispute is ecclesiastical or merely a civil-

law controversy in which the church happens to be involved." *In re Lubbock*, 624 S.W.3d at 514. "[I]f the substance and nature of the plaintiff's claims are inextricably intertwined with matters of doctrine or church governance, then the case must be dismissed." *Id.*

"Churches have a fundamental right under the First Amendment to decide for themselves, free from state interference, matters of church governance as well as those of faith and doctrine." *Id.* "Government action that interferes with this autonomy or risks judicial entanglement with a church's conclusions regarding its own rules, customs, or laws is . . . prohibited by the First Amendment." *Id.*; *see also In re Godwin*, 293 S.W.3d 742, 748 (Tex. App.—San Antonio 2009, no pet.) (orig. proceeding) ("[C]ivil courts may not intrude into the church's governance of 'religious' or 'ecclesiastical' matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality.") (quoting *Williams v. Gleason*, 26 S.W.3d 54, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). "Although wrongs may exist in the ecclesiastical setting, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities that may result from its liberal application." *In re Godwin*, 293 S.W.3d at 748 (quoting *Williams*, 26 S.W.3d at 59).

The First Amendment, however, does not bar all claims against religious bodies. *In re Lubbock*, 624 S.W.3d at 513. "A court may exercise jurisdiction over a controversy if it can apply neutral principles of law that will not require inquiry into religious doctrine, interference with the free-exercise rights of believers, or meddling in church government." *Id.* Under the neutral-principles methodology, courts decide non-ecclesiastical issues "based on the same neutral principles of law applicable to other entities, while deferring to religious entities' decisions on ecclesiastical and church polity questions." *Id.* (quoting *Masterson*, 422 S.W.3d at 596). Although the Texas Supreme Court has not applied the neutral-principles methodology outside church

property disputes, it has acknowledged that lower courts in Texas have done so "in certain, narrow circumstances." *Id.* (citing *Shannon*, 476 S.W.3d at 624–25). However, the supreme court has cautioned:

> [A]ny exception to ecclesiastical abstention by application of neutral principles must be narrowly drawn to avoid inhibiting the free exercise of religion or imposing secular interests on religious controversies. . . . In other words, courts should consider not only whether a neutral principle exists without regard to religion, but also whether the application of neutral principles would impose civil liability upon a church for complying with its own internal rules and regulations or resolving a religious matter.

*Id.*; *cf. Masterson*, 422 S.W.3d at 606 ("[D]ifferences between ecclesiastical and non-ecclesiastical issues will not always be distinct.").

## DISCUSSION

Craver argues his case presents a "run-of-the mill" civil dispute, which can be resolved by application of neutral principles of law and without reference to religious matters. He contends: "While Faith Lutheran's decision to terminate [him] is generally unreviewable, [his] claims have nothing to do with that and are instead about Faith Lutheran's obligations under a secular, civil contract not to make certain statements."

We disagree that church matters can be so cleanly and completely severed. Instead, the substance and nature of Craver's fraudulent inducement and breach of contract claims are "inextricably intertwined" with matters of Faith Lutheran's church governance. *See In re Lubbock*, 624 S.W.3d at 513. We consider both claims together because, as this case has been presented, both claims rely on circumstances surrounding contract formation and it is those circumstances which implicate the ecclesiastical abstention doctrine. *Cf. Shannon*, 476 S.W.3d at 620 ("When

the claims are dependent on the same facts, . . . it is not always necessary to address each claim separately.").[3]

To begin, while Craver asserts that he does not contest the Congregation Council's "decision to terminate" his call, the Council never made such a decision. Rather, it is uncontested that the Congregation Council made a recommendation to Craver that he resign, and Craver did. Under the Church's constitution, a pastor may agree to carry out the Council's recommendation, and if a pastor fails to agree, the congregation may dismiss the pastor by a 60% majority vote of the congregation.

Against this background, we cannot untwine recommendations Church executives made in the course of church governance from the allegedly fraudulent representations that form the basis of Craver's lawsuit. For example, the Vice President of the Congregation Council averred that the Council believed it was in the best interest of the congregation to offer Craver the option to enter into a separation agreement. Craver also acknowledged signing the Severance Agreement because he did not want to "cause division amongst the congregation." One congregant averred that Craver was told by council members that if he signed a separation agreement "it would go no further." The alleged representations made by Congregation Council members could comprise recommendations authorized by the Church's constitution. In all events, untangling recommendations made as a matter of church governance from actionable, fraudulent inducements would require close scrutiny of statements made in the course of the Church's management of its internal affairs. Merely attempting to separate allegedly fraudulent representations from

---

[3] Craver does not assert that the recital in the Severance Agreement, quoted in the background section, is a binding contractual term without reference to surrounding circumstances. *Cf. Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.) ("Recitals in a contract are not strictly part of the contract, and they will not control the operative phrases of the contract unless those phrases are ambiguous."); *see also Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 232 (Tex. 2019). As stated in the background, Craver does not pinpoint the contractual term he seeks to enforce, and he cites to a pattern jury charge to suggest that surrounding circumstances are relevant to his breach of contract claim.

recommendation made as a matter of church governance, "risks judicial entanglement" with the Church's "rules, customs, or laws." *In re Lubbock*, 624 S.W.3d at 513; *cf. Westbrook*, 231 S.W.3d at 391–92 (holding "parsing" pastor's conflicting roles and duties "would unconstitutionally entangle the court in matters of church governance and impinge on the core religious function of church discipline").

Craver's basis for damages also presents entanglement concerns. Craver asserts damages as a result of the airing of allegations to the congregation in a newsletter and at a congregational meeting called in response to inquiries from congregants who wanted to know the circumstances surrounding his departure as the Church's senior pastor.[4] Although the congregants did not vote on Craver's dismissal, the matter of Craver's departure, as the Church's senior pastor, was "of prime ecclesiastical concern." *McClure v. Salvation Army*, 460 F.2d 553, 558–59 (5th Cir. 1972) ("The relationship between an organized church and its ministers is its lifeblood."); *see also Westbrook*, 231 S.W.3d at 402 ("[Q]uestions of church discipline and composition of the church hierarchy are at the core of ecclesiastical concern." (quoting *Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 717 (1976)).

We cannot ignore the context from which Craver's claims arose. *See In re Alief Vietnamese All. Church*, 576 S.W.3d 421, 433 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (orig. proceeding) (holding contested statements related to matters of church governance because statements could not be considered in isolation and had to be viewed in their context of a struggle over church governance). In *Westbrook*, for example, facts giving rise to a professional-negligence

---

[4] Craver asserts in his petition that Faith Lutheran made false statements to LCMC, a governing body for the Lutheran Church, but he does not discuss any such statements in his appellate brief. Therefore, we discuss only alleged statements made to the congregation, as Craver has. Additionally, we note that the only apparent reference to statements by the Church to LCMC in the record is found within the affidavit of the Congregation Council's Vice President. He avers that *prior* to the execution of the Severance Agreement and Craver's departure, three members of the Church's executive committee and three representatives of LCMC met with Craver to discuss accusations made against Craver and options for moving forward.

claim could not be "isolated" from the church-disciplinary process from which the claims arose; therefore, they were barred by the ecclesiastical abstention doctrine. *See Westbrook*, 231 S.W.3d at 400. In *In re Godwin*, we determined that statements made to congregants were "directed to church governance and maintaining harmony within the congregation" and that defamation and related tort claims were barred by the ecclesiastical abstention doctrine because the claims "encroache[d] upon the autonomy of the church to decide matters of internal church discipline and governance." *In re Godwin*, 293 S.W.3d at 749. Likewise, here, the Church's allegedly false representations and the disclosure of allegations against Craver to the congregation cannot be separated from matters of internal church discipline and governance from which they arose, and Craver's claims, if allowed, would impede the Church's internal deliberations about its senior minister and hamper efforts to heal divisions and maintain harmony within the congregation. *See Westbrook*, 231 S.W.3d at 400; *In re Godwin*, 293 S.W.3d at 749; *cf. Becker v. Clardy*, No. 03-10-00376-CV, 2011 WL 6756999, at *3 (Tex. App.—Austin Dec. 22, 2011, pet. denied) (mem. op.) (holding ecclesiastical abstention doctrine barred defamation claims where alleged statements and asserted damage to reputation were confined to church community).

Craver directs us to *Shannon v. Memorial Drive Presbyterian Church U.S.*, and he asserts that his breach of contract claim "is in all relevant respects identical to the claim in *Shannon*." In *Shannon*, a church dismissed its employee, Jessica Shannon, and, thereafter, the parties entered into a separation agreement containing a non-disparagement clause. *Shannon*, 476 S.W.3d at 618. When Shannon's new employer called to check references, church employees stated that they could not "think of a circumstance" under which the church would rehire Shannon and that Shannon would have difficulties performing her new job as a development officer. *Id.* at 618–19. The court of appeals allowed Shannon's breach of contract, libel, and slander claims to proceed

because they "[could] be analyzed under a neutral definition in purely secular terms." *Id.* at 619, 624, 632. The supreme court, citing *Shannon* favorably, explained the case's dispositive features:

> The statements that Shannon identified as leading to her termination related to her capacity to operate as a development officer and raise funds, unrelated to any ministerial or clerical role. The court could apply neutral principles of contract law to determine whether the church disparaged her in violation of the settlement agreement without intervening in areas traditionally held to involve religious doctrine; interpreting church constitutions, by-laws, or governing documents; or deciding matters of the congregational or hierarchical nature of the church.

*In re Lubbock*, 624 S.W.3d at 517–18 (citing *Shannon*, 476 S.W.3d at 624–25).

Craver's claims are markedly different. First, the allegedly disparaging statements at issue relate directly to Craver's role as a minister and religious leader of Faith Lutheran. Specifically, Craver challenges the disclosure of allegations to congregants related to his allegedly inappropriate behavior while senior pastor. Second, even if we could apply neutral principles of law to resolve Craver's claims, we would inevitably intervene in areas concerning the interpretation of the Church's constitution, by-laws, and governing documents and areas concerning a congregational or hierarchical nature of the Church. *See id.*; *see also Westbrook*, 231 S.W.3d at 397 (explaining, even if it were "theoretically true" that court could resolve claims on neutral principals, "that doesn't answer whether it's doing so would unconstitutionally impede the church's authority to manage its own affairs."). Third, Craver does not sue for a violation of an express non-disparagement clause, as Shannon did. Nor does he seek to enforce an unambiguous contract term on a non-ecclesiastical issue, which the supreme court has allowed with property disputes. *See Westbrook*, 422 S.W.3d at 399. Instead, Craver points to a recital in the Severance Agreement, a term in the Agreement that settlement terms must remain confidential, and circumstances surrounding contract formation. In short, Craver's lawsuit is not similar to Shannon's because it does not present a straightforward application of a contract term and complaints unrelated to any

ministerial or clerical role. *See In re Lubbock*, 624 S.W.3d at 517–18 (citing *Shannon*, 476 S.W.3d at 624–25).

As the supreme court recognized, "[a]lthough wrongs may exist in the ecclesiastical setting, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities that may result from its liberal application." *In re Godwin*, 293 S.W.3d at 748 (quoting *Williams*, 26 S.W.3d at 59); *see also In re Lubbock*, 624 S.W.3d at 513. We hold Craver's claims for fraudulent inducement and breach of contract are barred by the ecclesiastical abstention doctrine because the substance and nature of the claims are inextricably intertwined with matters of church governance.

## CONCLUSION

The jurisdictional evidence establishes that Craver's claims unconstitutionally impinge upon internal matters of Faith Lutheran's governance, in violation of the First Amendment, and affirmatively negates subject-matter jurisdiction. *See Westbrook*, 231 S.W.3d at 405. Therefore, we affirm the trial court's dismissal of Craver's lawsuit.[5]

Rebeca C. Martinez, Chief Justice

---

[5] Because we affirm based on the ecclesiastical abstention doctrine, we do not reach the issue of whether the ministerial exception would bar Craver's claims.